IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN WILLIAMS,                          )
                                        )
            Petitioner,                 )      No. C 06-6272 CRB (PR)
                                        )
      vs.                               )      ORDER DENYING
                                        )      PETITION FOR A WRIT OF
BEN CURRY, Warden,                      )      HABEAS CORPUS
                                        )
            Respondent.                 )
_____ )

        Petitioner, a state prisoner incarcerated at the Correctional Training

Facility in Soledad, California, seeks a writ of habeas corpus under 28 U.S.C. §

2254 challenging the California Board of Parole Hearings' ("BPH") November

29, 2005 decision to deny him parole.

        Per order filed on February 26, 2007, the court found that petitioner's

claim that the BPH's decision finding him not suitable for parole does not

comport with due process appears colorable under § 2254, when liberally

construed, and ordered respondent to show cause why a writ of habeas corpus

should not be granted.  Respondent has filed an answer to the order to show cause

and petitioner has filed a traverse.

**BACKGROUND**

On October 4, 1994, petitioner was convicted of attempted murder in the first degree with great bodily injury in Riverside County superior court and was sentenced to an indeterminate term of seven years to life, plus three years, in state prison with the possibility of parole.

On November 29, 2005, petitioner appeared before the BPH for a parole consideration hearing for the fourth time. The BPH found him unsuitable for parole and denied him a subsequent hearing for two years.

Petitioner challenged the BPH's November 29, 2005 decision in the state superior, appellate and supreme courts. After the Supreme Court of California denied his petition for review on August 2, 2006, the instant federal petition for a writ of habeas corpus followed.

**DISCUSSION**

A.    <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." <u>White v. Lambert</u>, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. at § 2254(d).  Under this standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

B.      Legal Claims and Analysis

Petitioner seeks federal habeas corpus relief from the BPH's November 29, 2005 decision finding him not suitable for parole, and denying him a subsequent hearing for two years, on the ground that the decision does not comport with due process.  Petitioner claims that the BPH's decision is not supported by some evidence in the record because it is based on immutable factors such as the nature of the crime and his pre-commitment substance abuse history.  Petitioner also claims that the BPH must provide him with a fixed parole release date under its sentencing matrices.

California's parole scheme provides that the board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed

3

at this meeting." Cal. Penal Code § 3041(b).  In making this determination, the board must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offenses, including behavior before, during and after the crime.  See Cal. Code Regs. tit. 15, § 2402(b) – (d).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole which cannot be denied without adequate procedural due process protections."  Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002). It matters not that, as is the case here, a parole release date has not been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate."  Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003).

Petitioner's due process rights require that "some evidence" support the parole board's decision finding him unsuitable for parole.  Sass, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); Biggs, 334 F.3d at 915 (same); McQuillion, 306 F.2d at 904 (same).  This "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPH] were without support or otherwise arbitrary."  Hill, 472 U.S. at 457.  Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  Id. at 455-56 (quoted in Sass, 461 F.3d at 1128).

Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability.  Biggs, 334 F.3d at 915; McQuillion, 306 F.3d at 904.  Relevant in this inquiry "is whether the prisoner was afforded

4

an opportunity to appear before, and present evidence to, the board." Morales v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on other grounds, 514 U.S. 499 (1995).  In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision.  Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

The record shows that the BPH panel afforded petitioner and his counsel an opportunity to speak and present their case at the hearing, gave them time to review petitioner's central file, allowed them to present relevant documents and provided them with a reasoned decision in denying parole.

The panel concluded that petitioner "is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison."  Nov. 29, 2005 Hr'g Tr. at 41 (Resp't Ex. 2).  It based its decision on several grounds, including the circumstances of petitioner's attempted murder:

> On April 27th, 1994, John Williams drove [v]ictim Rachel Oliver, . . . who he had known approximately one year, to a secluded area in South Corona under the pretense that they were driving to a friend's house so that Oliver's car could be repaired.  After pulling off the roadway, and then onto a dirt roadway, Williams told Oliver that they had to walk to the friend's house.  While walking together, Williams told Oliver to hide from a vehicle coming their way, which Oliver did not hear . . . .  They then walked off the dirt road into an area containing orange groves.  While walking back to the vehicle through the orange groves, Williams took a (indiscernible) wire with a handle on each end used for strangulation and put it around Oliver's neck.  Williams then stated, "I have to kill you." Oliver then saw Williams pulling and twisting the handles as she passed out.  Oliver awoke and saw Williams kneeling over her. Williams then used the [garrote] a second time, and . . . Oliver again passed out.  After an unknown amount of time, Oliver wakes up again and finds that her pants and underwear are down around her right ankle.  She has a feeling that she'd been raped.  Oliver then walked to the roadway and was able to flag down a passing motorist, . . . who then calls the police.  Williams was arrested a short time later in possession of Oliver's vehicle.

5

Id. at 6-8.  Petitioner did not discuss the offense at the hearing, but at the previous

hearings had indicated that he had been "up for many days on speed" before the

attempted murder occurred and that he "just wanted to scare the hell out of her so

she would stop bothering me for drugs and leaving [sic] my family lone."  Id. at

10.

The panel explained that it found that the offense was carried out in a

"dispassionate and calculated manner" which demonstrated "an exceptionally

callous disregard for human suffering." Id. at 41-42.  Petitioner used a garrote

made from wire secured to wooden handles with tape, which had to be removed

from the victim's neck by the fire department, and left the victim to die or suffer

additional injuries from the garrote in her neck  Id.  The panel found that

petitioner had a criminal history involving numerous drug offenses that reflected

that he had "failed to profit from society's attempts to correct this criminality"

through time in jail and on probation. Id. at 43-44.  The panel found that

petitioner should complete additional substance abuse therapy because his recent

gains in the area were relatively recent. Id. at 47-48.  It noted that petitioner's

substance abuse history and resulting criminality made the his substance abuse

programming  "so important" in giving the board "confidence that [petitioner has]

alternatives to a stressful day, [if] something doesn't work right for you." Id. at

45.  The panel found that petitioner had received a disciplinary rules violation

report (referred to as a "115") a year earlier for taking food items out of the

dining hall and before that had received a counseling memorandum for similar

misconduct.  The panel commended petitioner on his progress while in prison,

specifically noting his vocational programs and work assignments. Id. at 50-51.

Nonetheless, the BPH concluded that the positive aspects of petitioner's  behavior

did not outweigh the factors of unsuitability.  Id.  It denied parole for a period of

two years, rather than one year, based on the recent disciplinary action and so that petitioner would have adequate time to complete more substance abuse therapy. Id. at 45.

The state superior court affirmed the decision of the BPH and the state appellate and supreme court summarily affirmed.  The superior court found that the petition failed to "state a prima facie case supporting petitioner's release" because "[t]he record before the [BPH] contained some evidence in support  of [its] findings."  In re Williams, No. RIC 445632, slip op. at 1 (Cal Super. Ct. Apr. 3, 2006) (Resp't Ex. 7).

The state court's rejection of petitioner's due process claim was not contrary to, or an unreasonable application of, the Hill standard, or was based on an unreasonable determination of the facts.  See 28 USC § 2254(d).  The BPH's November 29, 2005 decision to deny petitioner parole after his fourth parole consideration hearing is supported by some evidence in the record and that evidence bears some indicia of reliability.  See, e.g., Rosas, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and psychiatric reports); Biggs, 334 F.3d at 916 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); Morales, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense and need for further psychiatric treatment).  The inquiry under Hill is simply "whether there is any evidence in the record that could support the conclusion reached by the [BPH]."  Hill, 474 U.S. at 455-56 (emphasis added).  There is – the facts surrounding the crime reasonably suggest that it was carried out in a cruel and callous fashion; petitioner has a history of substance abuse and resulting criminality; petitioner's involvement in substance abuse therapy had only been in the last five out of eleven years in prison; and petitioner had recently received a

disciplinary report for misconduct for which he had earlier also received a counseling memorandum.  Cf. Cal. Code Regs. tit. 15, § 2402(c) & (d) (listing circumstances tending to show unsuitability for parole and circumstances tending to show suitability).  It is not up to this court to "reweigh the evidence."  Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994).  The panel's legitimate concern with petitioner's recent disciplinary violation and need for additional substance abuse therapy, in view of his relatively recent gains and history of substance abuse and resulting criminality, constitutes some evidence under Hill and supports the board's determination that Lopez posed an unreasonable risk of danger to society if released from prison.  See Hayward v. Marshall, 512 F.3d 536, 543 (9th Cir. 2008) (test is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates a prisoner's release unreasonably endangers public safety).

Petitioner argues that the BPH relied on immutable factors such as the nature of the commitment offense and his pre-commitment substance abuse history in determining that he is not suitable for parole which conflicts with the Ninth Circuit's ruling in Biggs.[1]  He also argues that the panel impermissibly relied on his refusal to discuss the crime at the hearing as a basis for finding him not suitable for parole.  None of these arguments compel federal habeas relief because the BPH did not base its decision solely on the facts of petitioner's commitment offense, pre-commitment substance abuse history and/or refusal to discuss the crime at the hearing.  The BPH found that petitioner's recent

---

[1] In Biggs, the Ninth Circuit upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that, over time, denying a prisoner parole strictly because of the nature of his offense and his prior conduct "would raise serious questions involving his liberty interest in parole . . . and could result in a due process violation."  Biggs, 334 F.3d at 916-17.

disciplinary violation and need for additional substance abuse therapy, in view of his relatively recent gain and history of substance abuse and resulting criminality, weighed against his release on parole at this time. These findings alone constitute some evidence under <u>Hill</u> and support the board's determination that petitioner posed an unreasonable risk of danger to society if released from prison. <u>See</u> <u>Hayward</u>, 512 F.3d at 543.[2]

Petitioner claims that the BPH must provide him with a fixed parole date under California's sentencing matrices. The claim is without merit. The Supreme Court of California has held that the BPH need not evaluate an inmate's crime against the sentencing matrices because unless and until the inmate is found suitable for parole a date for the inmate's release need not be set. <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1070-01 (2005). This court is bound by the Supreme Court of California's interpretation of California law. <u>See</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) (state court's interpretation of state law binds federal court sitting in habeas); <u>Hicks v. Feiock</u>, 485 U.S. 624, 629 (1988) (same).

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:  May 13, 2008                    _____
                                         CHARLES R. BREYER
                                         United States District Judge

_____

[2]Although the panel noted that petitioner's decision to refrain from discussing the commitment offense resulted in a lack of evidence regarding his insight into the crime, there is no evidence that the panel actually denied parole based on petitioner's decision. <u>See</u> Nov. 29, 2005 Hr'g Tr. at 42-43, 52.